UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BURT VELDMAN,

        Plaintiff,                                     Hon. Wendell A. Miles

v.                                                        Case No. 1:04-CV-799

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

        The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 53 years of age at the time of the ALJ's decision. (Tr. 15). He successfully completed high school and worked previously as a truck driver, auto mechanic, business owner, salesperson, and assembler. (Tr. 15, 101, 109-16).

Plaintiff applied for benefits on April 3, 2000, alleging that he had been disabled since December 3, 1998, due to a hip impairment. (Tr. 74-76, 100). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 24-73). On July 7, 2004, Plaintiff appeared before ALJ Stephen McGuire, with testimony being offered by Plaintiff and vocational expert, Julie Bose. (Tr. 498-517). In a written decision dated September 4, 2004, the ALJ determined that Plaintiff was not disabled. (Tr. 15-23). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-8). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 1998. (Tr. 16, 84-94); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## MEDICAL HISTORY

On January 13, 1999, Plaintiff was examined by Dr. Joseph Brock. (Tr. 336). Plaintiff reported that he injured his right hip while snowblowing. Plaintiff moved "up and down the examining table without assistance," but was "very dramatic" when the doctor tried to elevate or raise his leg. X-rays of Plaintiff's right hip revealed a "slight deformity of both femoral heads" and "minimal narrowing of the hip joint spaces," but no evidence of fracture. (Tr. 387).

On April 8, 1999, Plaintiff was examined by physician's assistant, David Wilkins. (Tr. 333). Plaintiff reported that he was experiencing lower back pain which radiated into his right lower extremity. Straight leg raising was positive and the doctor observed tenderness in Plaintiff's lower back. Plaintiff exhibited normal strength and a "fairly decent" range of motion. *Id.*

The following day Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed "mild" degenerative changes with no evidence of disc herniation or spinal stenosis. (Tr. 385). On April 16, 1999, Plaintiff participated in a nerve conduction study, the results of which revealed evidence consistent with right lumbosacral radiculopathy. (Tr. 217). On May 17, 1999, Plaintiff reported that his recently prescribed pain medication had "significantly" improved his back pain. (Tr. 331).

On June 21, 1999, Plaintiff was examined by Mr. Wilkins. (Tr. 329). An examination of Plaintiff's lumbosacral spine revealed no evidence of tenderness and Plaintiff exhibited full range of motion. Plaintiff also exhibited "normal" strength, gait, and stance. *Id.*

On August 12, 1999, Plaintiff was examined by Dr. Brock. (Tr. 328). Plaintiff reported that he was experiencing pain in his right hip. He reported that his back was "ok" and that it was "mostly" his hip that was causing his pain. Straight leg raising was negative, but his right hip

was "extremely irritable." The doctor suspected that Plaintiff may be suffering avascular necrosis of the right hip. *Id.* On September 1, 1999, Plaintiff participated in an MRI examination of his right hip, the results of which confirmed Dr. Brock's suspicion. (Tr. 382).

On October 13, 1999, Plaintiff was examined by Dr. A. Scott Lachniet. (Tr. 220-21). Plaintiff reported that he had been experiencing right hip pain for "approximately nine months." (Tr. 220). Plaintiff walked with an "obvious limp," but was able to "flex forward and touch his toes without pain." An examination revealed no evidence of lumbar spinous process tenderness, no pain on pelvic compression, and no sacroilliac joint tenderness. Straight leg raising was negative and the results of a neurological examination were "normal." Plaintiff's right hip was "extremely irritable," but he exhibited full range of motion. An MRI examination revealed a "very large lesion of osteonecrosis of his right femoral head." Dr. Lachniet concluded that nothing was going to help Plaintiff "short of total hip arthroplasty." *Id.* Plaintiff agreed and underwent surgery on October 22, 1999. (Tr. 220, 222).

Plaintiff participated in home-based physical therapy following his surgery. (Tr. 236). He was discharged from this program on November 12, 1999, after achieving independence of gait and weight transfer. On December 6, 1999, Plaintiff was examined by Dr. Lachniet. Plaintiff reported that he was "fairly comfortable." *Id.* X-rays of Plaintiff's right hip revealed that "the femoral and acetabular components are well seated without evidence of complication." (Tr. 239). The doctor concluded that Plaintiff could begin walking with a cane. (Tr. 236). A January 3, 2000 examination by Dr. Lachniet revealed that Plaintiff was "steadily improving." On February 3, 2000, Plaintiff was cleared to begin riding a stationary bicycle for exercise. *Id.*

5

On April 24, 2000, Plaintiff was examined by Dr. Brock. (Tr. 322). Plaintiff reported that his hip was "much better" and that he only experiences "a little bit of stiffness." Plaintiff was in no apparent distress and the results of the examination were unremarkable. *Id.*

On June 16, 2000, Plaintiff reported that he was "doing well" with respect to his right hip. (Tr. 320). On June 26, 2000, Plaintiff was examined by Dr. Lachniet. (Tr. 235). Plaintiff walked "almost with a normal gait" and reported that he experiences "a little stiffness if he sits or lies down for a long period of time." The doctor instructed Plaintiff to return in one year. *Id.*

On February 1, 2001, Plaintiff asked Dr. Lachniet "if he could go golfing." (Tr. 235). The doctor instructed Plaintiff that "this would be fine." *Id.*

On January 15, 2002, Plaintiff returned to Dr. Lachniet complaining of groin and thigh pain. (Tr. 234-35). Plaintiff reported that he "has been doing a lot of walking on ice, very stiff legged." (Tr. 235). The doctor concluded that Plaintiff was experiencing tendinitis for which he prescribed physical therapy. (Tr. 234). On February 13, 2002, Plaintiff reported that his symptoms "have almost completely resolved." *Id.*

On April 9, 2002, Plaintiff was examined by Dr. Brock. (Tr. 311-12). Plaintiff reported that he was experiencing "persistent" pain in his right hip. (Tr. 312). Plaintiff exhibited "increased pain" on rotation of his right hip. *Id.*

On April 11, 2002, Plaintiff returned to Dr. Lachniet, complaining of thigh pain. (Tr. 234). The results of a physical examination were "quite unremarkable" and x-rays of Plaintiff's right hip revealed "no evidence of complication." *Id.*

On May 7, 2002, Plaintiff was examined by Dr. Brock. (Tr. 309-10). Plaintiff reported that he was experiencing right hip pain which radiated down his right leg. (Tr. 309). An

examination of Plaintiff's right hip revealed "limited," but "non-painful," range of motion. Straight leg raising was negative and Plaintiff exhibited full range of motion in his knees. Plaintiff was diagnosed with "lumbar degenerative disc disease - quiescent at this time." The doctor instructed Plaintiff to perform back strengthening exercises. *Id.*

X-rays of Plaintiff's lumbosacral spine, taken on June 7, 2002, were "negative," revealing that the "vertebral body heights and disc spaces are reasonably well maintained." (Tr. 376). An MRI examination of Plaintiff's lumbar spine, performed the same day, revealed "stable relatively mild degenerative change of the lumbar spine without evidence of a discrete disc herniation or spinal stenosis." (Tr. 375).

On August 27, 2002, Plaintiff was examined by Dr. Mark Moulton. (Tr. 253-54). Plaintiff reported that he was experiencing lower back pain. (Tr. 254). Plaintiff reported that his pain was exacerbated by bending, lifting, twisting, standing, and prolonged ambulation. Plaintiff was able to ambulate "comfortably" and perform heel/toe walking "without difficulty." Plaintiff exhibited "good" balance and "reasonable" flexibility. *Id.* Straight leg raising was negative and Plaintiff exhibited 5/5 strength in his lower extremities. (Tr. 253-54). X-rays revealed "mild to moderate" spondylosis at L4/5 and L3/4, but no evidence of fracture or instability. (Tr. 253). The results of an MRI examination revealed "mild" degenerative disc disease at L4/5 and "significant" spondylosis at L3/4, but no evidence of stenosis or nerve root displacement. Plaintiff received an L5 nerve root injection. *Id.*

On September 26, 2002, Plaintiff received a nerve block injection to treat his lower back pain. (Tr. 457-59). Plaintiff received another such injection on November 7, 2002. (Tr. 455).

7

On November 13, 2002, Plaintiff was examined by Dr. Moulton. (Tr. 250). Plaintiff reported that he was experiencing "no back pain to speak of." *Id.*

On August 13, 2003, Plaintiff reported that he was doing "fairly well," rating his back pain as four. (Tr. 453).

On February 3, 2004, Plaintiff was examined by Dr. Lachniet. (Tr. 482). Plaintiff denied experiencing any pain or symptoms in his right hip. Plaintiff walked without a limp and exhibited "good range of motion." X-rays of Plaintiff's hip revealed no evidence of complications or loosening of the acetabular components. The doctor observed no "demonstrable problem" with Plaintiff's right hip. *Id.*

On June 14, 2004, Dr. Brock wrote the following regarding Plaintiff's impairments and his ability to perform work activities:

> The conditions that most limit [Plaintiff's] activities are pain in the lower back and right lower extremity. Mr. Veldman has been referred to Dr. Mark Moulton, an orthopedic surgeon, as well as Mercy Pain Clinic for treatment of these symptoms. To date, only conservative care has been recommended. Mr. Veldman attempts to control his symptoms through use of pain medications, hot baths and activity modification. He is capable of approximately two hours of activity and then must get off his feet and lie down or recline. He is currently working part-time for Meals on Wheels. This job allows him to limit his lifting to less than ten pounds and also allows him to recline when necessary. I do not believe he is capable of any other work activities.

(Tr. 494).

At the administrative hearing Plaintiff testified that he can walk approximately 300 yards, sit for 45 minutes, stand for 30-45 minutes, and lift 10 pounds. (Tr. 507). He also testified that he is able to vacuum, cook, and mow his lawn, but must lie down after doing so. (Tr. 508).

8

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) status post right hip replacement secondary to avascular necrosis and (2) mild degenerative disc disease of the lumbar spine. (Tr. 20). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

determined that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 17-22). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he can lift/carry 20 pounds occasionally and 10 pounds frequently, (2) he can push/pull 20 pounds, (3) he can stand, walk, and sit for 6 hours during an 8-hour workday, and (4) he requires a sit-stand option. (Tr. 17). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Julie Bose.

The vocational expert testified that there existed approximately 17,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 513-14). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

a. Dr. Brock's Opinion does not Establish Plaintiff's Disability

In a letter dated June 14, 2004, Dr. Brock offered the following opinion regarding Plaintiff's impairments and his ability to perform work activities:

> The conditions that most limit [Plaintiff's] activities are pain in the lower back and right lower extremity. Mr. Veldman has been referred to Dr. Mark Moulton, an orthopedic surgeon, as well as Mercy Pain Clinic for treatment of these symptoms. To date, only conservative care has been recommended. Mr. Veldman attempts to control his symptoms through use of pain medications, hot baths and activity modification. He is capable of approximately two hours of activity and then must get off his feet and lie down or recline. He is currently working part-time for Meals on Wheels. This job allows him to limit his lifting to less than ten pounds and also allows him to recline when necessary. I do not believe he is capable of any other work activities.

(Tr. 494).

Plaintiff asserts that Dr. Brock's statement establishes that he is disabled. He further asserts that because Dr. Brock was his treating physician, the ALJ was obligated to accord controlling weight to his opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232,

235 n.1 (6th Cir. 1987)).  The ALJ is not bound by conclusory statements, particularly when unsupported by detailed objective criteria and documentation.  *See Cohen*, 964 F.2d at 528.  Finally, the ALJ need not defer to an opinion contradicted by substantial medical evidence.  *See Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

First, as the ALJ properly concluded, the objective medical evidence fails to support Dr. Brock's opinion.  Moreover, it must be recognized that while Dr. Brock offered his opinion more than five years after the expiration of Plaintiff's insured status he did not offer an opinion as to Plaintiff's condition as of the date his insured status expired.  Instead, Dr. Brock's statement regards Plaintiff's then-present condition.  Thus, even if the ALJ accorded controlling weight to Dr. Brock's opinion, such would not establish that Plaintiff was disabled as of the date his insured status expired.

b.  The ALJ Properly Assessed Plaintiff's Subjective Allegations

At the administrative hearing Plaintiff testified that to relieve his back pain he is required to lie down for 1-2 hours each day and take 4-5 baths.  (Tr. 510).  As noted above, Plaintiff also testified that while he is able to perform various household activities he must lie down after doing so.  (Tr. 507-08).  Plaintiff asserts that because this testimony is consistent with Dr. Brock's opinions, the ALJ improperly discounted his subjective allegations.

As the relevant Social Security regulations make clear, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)).  As the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged

13

symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

It is not disputed that Plaintiff suffers from severe impairments. However, as the ALJ properly concluded, the objective medical evidence does not support Plaintiff's subjective allegations. More importantly, however, it must be noted that Plaintiff's testimony - offered more than five years after the expiration of his insured status - related to his then-present condition. Plaintiff, who was represented by counsel, offered absolutely no testimony regarding his condition as of the date his insured status expired. Thus, even if Plaintiff's testimony is accorded controlling weight, it fails to establish that he was disabled as of the date his insured status expired.

**CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision conforms to the proper legal standards and is supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date:  January 23, 2006                                       /s/ Ellen S. Carmody
                                                                                 ELLEN S. CARMODY
                                                                                 United States Magistrate Judge